IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

V.                                                              CAUSE NO. 3:20-CR-128-CWR-LGI

WILLIAM GLENN CHUNN, et al.                                     DEFENDANTS

**ORDER**

Before the Court is William Glenn Chunn's motion for reconsideration of the Court's Order, Docket No. 188, admitting a statement made by Aaron Rentfrow on the grounds that it is a co-conspirator statement. Docket No. 191. The Government opposes reconsideration. Docket No. 195.

**I.     Factual and Procedural History**

On September 22, 2020, a federal grand jury returned a three-count indictment against five defendants: William Glenn Chunn, Aaron Matthew Rentfrow, Johnathon Aaron Reynolds, Daniel Wade Holler, and Jeremy Chad Dennis. The five were charged with violating the Racketeer Influenced and Corrupt Organizations Act (RICO).

The charges stem from a stabbing at the United States Penitentiary in Yazoo City, Mississippi, the prison where the defendants were housed. *See* Docket No. 3. The Government seeks to show that on or around August 17, 2017, Rentfrow, at the direction of Chunn, brutally beat and stabbed another inmate, M.M., to gain entrance into the "whites-only" prison gang, the Aryan Circle. Reynolds, also an Aryan Circle recruit, is alleged to have held the door for Rentfrow during the attack.

At issue today is testimony that arose in a companion case. In that case, Chunn was convicted in the U.S. District Court for the Eastern District of Texas for RICO violations involving

many of facts at issue here. Specifically, at the EDTX trial, a fellow inmate named Atwood testified that,

> A. [Rentfrow] told me that he stabbed [M.M.] and -- he stabbed him. And he had to stab him 13 times in order to get his patch.[1] And then he told me after he stabbed him, the dude came crawling out of the cell, and [Chunn] made him go back up there and take him back in there and finish him out and stomp him all of the way out.
> Q. When you say Rentfrow told you that the dude had come crawling out of the cell, who are you referring to?
> A. [M.M.]
> Q. And when you spoke to Aaron Rentfrow about the stabbing, what was his attitude about it?
> A. I mean, he just – like, he didn't – it didn't bother him at all. He was happy he got his patch.

Docket No. 158-1 at 11-12.

Atwood also testified that Jonathan Reynolds told him that he earned his Aryan Circle patch by holding "the door while Aaron Rentfrow went in there and stabbed [M.M.] and beat him." *Id.* at 11.

In its earlier *Order*, the Court admitted Rentfrow's statement and excluded Reynolds', finding that the former "advance[d] the objective[s] of the conspiracy," *United States v. Jordan*, 260 F.3d 930, 933 (8th Cir. 2001), while the latter resembles "mere idle chatter," *United States v. Gurrola*, 898 F.3d 524, 536 (5th Cir. 2018). *See* Docket No. 188.

This motion followed.

## II.    Legal Standard

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

---

[1] In this context, a "patch" means a tattoo signifying membership into the Aryan Circle.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quoting *Commentary, The Motion in Limine: Pretrial Trump Card in Civil Litigation*, 27 U. Fla. L. Rev. 531 (1975) (footnotes omitted)).

"Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Fair v. Allen*, No. 09-2018, 2011 WL 830291 (W.D. La. Mar. 3, 2011) (internal citations omitted); *see also Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-CV-129-DMB-SAA, 2015 WL 631512 at *1 (N.D. Miss. Feb. 13, 2015). "The purpose of motions in limine is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion in limine." *Maggette v. BL Development Corp.*, Nos. 2:07-CV-181-M-A, 2:07-CV-182-M-A, 2011 WL 2134578 at *4 (N.D. Miss. May 27, 2011) (italics omitted).

### III. Discussion

To satisfy the co-conspirator rule,

> the proponent of a statement must show by a preponderance of the evidence that (1) a conspiracy existed, (2) the statement was made by a co-conspirator of the opposing party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy.

*United States v. Gurrola*, 898 F.3d 524, 535 (5th Cir. 2018).

Chunn argues that Rentfrow's statement was made after Rentfrow attacked M.M. and thus, as a mere "narrative description of past criminal activity," is only admissible if made between co-conspirators. Atwood is not a co-conspirator. Therefore, as Chunn sees it, the statement does not fall under the hearsay exception for declarations of co-conspirators.

The Court disagrees.

Chunn's narrow view of the conspiracy, focusing on just the overt act in the indictment—the attack on M.M.—is at odds with the Government's theory of the case. "[T]he evidentiary rule of conspiracy is founded on concepts of agency law and therefore differs from conspiracy as a crime. Accordingly, a conspiracy for the purpose of hearsay exclusion may be shown merely by engaging in a joint plan . . . that was non-criminal in nature." *United States v. Fairley*, 880 F.3d 198, 213 (5th Cir. 2018) (internal quotations and citations omitted).

The Government has framed the objectives of the conspiracy as robust. For example, the Government alleges that members engaged in violence to "preserv[e], protect[], and enhance the power, territory, [and] reputation . . ." of the gang. Docket No. 3 at 7. Indeed,

> To perpetuate the enterprise and to maintain and extend their power, members and associates of the enterprise committed and conspired to commit acts involving murder, witness intimidation, and assault against individuals who posed a threat to the enterprise or jeopardized its operation, rival organizations, AC members, and witnesses to illegal activities of the enterprise.

*Id.* at 8.

Under this view, the fact that the statement was made after the *attack* does not mean that the statement was made after the *conspiracy*. The attack and the conspiracy are not one and the same. *See Fairley*, 880 F.3d 198, 213 (Fifth Circuit affirming statements made a year and six months after the overt acts in the indictment ended were made during and in furtherance of the conspiracy). Crediting the Government's representations of its theory, the Court finds that the statement was made during the conspiracy.

Turning to the in-furtherance element. As instructed by the Fifth Circuit, it "is not to be construed too strictly lest the purpose of the exception be defeated." *Gurrola*, 898 F.3d at 535. "[T]o pass muster, a statement must advance the ultimate objects of the conspiracy—'mere idle chatter' will not suffice." *Id.* at 536.

Rentfrow's statement identifies the conspiracy's key participants, details leaderships' commands and requirements for recruits and admission, and highlights the extent of their savagery to those that it considers a threat to it and/or Aryan Circle tenets. Moreover, it arguably lionizes Chunn. *See, e.g.,* Rolling Stone, *Throat-Stabbing and Tattoo Removal by 'Flaming Log': Two White Supremacist Gang Members Convicted in Federal RICO Case*, https://www.rollingstone.com/culture/culture-news/aryan-circle-convictions-doj-rico-1260217/ (last visited Aug. 11, 2022). This is underscored by the fact that Chunn is purportedly one of the five highest-ranking Aryan Circle leaders in the nation, *see* Department of Justice, Office of Public Affairs, *Two Aryan Circle Gang Leaders Convicted on Racketeering Charges*, and Rentfrow and Reynolds were his recruits. Indeed, after Rentfrow told Atwood about stabbing M.M., Atwood described Rentfrow's attitude as "happy." The statement passes muster and accordingly, was made in furtherance of the conspiracy.

To the extent Chunn argues that this statement is inadmissible because Atwood is not a member of the conspiracy, that is not the rule.

> As long as the declarant and the party against whom the statement is offered are deemed members of the conspiracy at the time the statement was made, any witness who heard the statement may recount it at trial. This is true whether or not the statement was made to a member of the conspiracy, and irrespective of whether the witness was a member of the conspiracy.

5 Weinstein's Federal Evidence § 801.34 (2021).

Reynolds' statement to Atwood, admitting that Reynolds held the door while Rentfrow attacked M.M., however, does not appear to meaningfully further the aims of the conspiracy: to "preserv[e], protect[], and enhance [its] power, territory, [and] reputation." Docket No. 3 at 7. Accordingly, the Court's earlier ruling will not be disturbed.

Finally, the Court admits Rentfrow's statement provisionally upon the Government establishing an adequate foundation *prior* to eliciting the statement. If it does not, as with all motions *in limine*, the Court may reconsider the issue upon a proper objection.

## IV. Conclusion

The motion for reconsideration is DENIED.

**SO ORDERED**, this the 12th day of August, 2022.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE